NAYJA JOHNSON,

                    Plaintiff,

v.                                          CIVIL ACTION NO.   3:24-cv-00334-TEJ

ERIC TILLMAN, et al.,
                    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is a Motion to Dismiss filed by the United States of America (the "United States" or "Government").   (ECF No. 33.)   For the reasons discussed herein, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.      BACKGROUND

On March 23, 2021, Frankie Junior Jennings ("Jennings") was fatally shot by Eric Tillman ("Tillman") of the United States Marshals Service ("USMS").   (ECF No. 1 at 1, ¶¶ 1, 3.)   At the time of the shooting, Tillman and other members Carolina Regional Fugitive Task Force ("CRFTF") were attempting to apprehend Jennings on outstanding arrest warrants.   (*Id.* at ¶¶ 4–6.)   A detailed recitation of the factual background is provided in the Court's previous Memorandum Opinion and Order.   (ECF No. 26.)

Plaintiff Nayja Johnson ("Plaintiff") subsequently initiated this suit.[1]   (*See generally* ECF No. 1.)   The Complaint asserts three counts.   Count One is a claim for Intentional Infliction of

---

[1] The Complaint names Tillman as a defendant, but the Court later granted the Government's motion to substitute the United States as the sole defendant in place of Defendant Tillman.   (ECF No. 26 at 3. n.2.)

Emotional Distress ("IIED").  (*Id.* at 7–9.)  Count Two is a claim for Negligent Infliction of Emotional Distress ("NIED").[2]  (*Id.* at 13–14.)  Count Three is a claim under the North Carolina State Constitution.  (*Id.* at 14–15.)  Plaintiff also seeks punitive damages.  (*Id.* at 15.)

Count One for IIED is based, in part, on the Government's "decision to include [her] as an inevitable witness and a natural barrier as a part of the vehicle containment recklessly disregarding the high probability that severe emotional distress would result."  (ECF No. 1 at 8, ¶ 61.)  Similarly, Count Two for NIED is based, in part, on the allegations that Plaintiff was (1) seized in the vehicle containment and (2) "seized . . . and held against her will and handcuffed,"[3] both of which caused her "severe emotional distress."  (*See id.* at 11, ¶¶ 88, 92, 93; *see also id.* at 13–14, ¶ 111, 112).  Count Two also states that the Government violated a USMS policy directive prohibiting the use of deadly force "solely to prevent the escape of a fleeing suspect," which caused her "severe emotional distress."  (*Id.* at 12, ¶ 96; *id.*, ¶ 112.)

The Government previously moved to dismiss Counts One and Two for, *inter alia*, lack of subject matter jurisdiction, arguing that, under the discretionary function exception ("DFE"), the Federal Torts Claims Act ("FTCA") did not waive sovereign immunity for alleged torts that occur when agents exercise discretion.[4]  (*See* ECF Nos. 9, 10.)  The DFE retains the sovereign

---

[2] Although Count Two is styled as alleging "negligence and gross negligence," the thrust of Plaintiff's allegation is that the CRFTF's actions caused her "severe emotional distress."  (ECF No. 1 at 13–14, ¶¶ 109–112, 114.)  Such an allegation is on all fours with a claim for NIED by virtue of standard negligence as well as gross negligence, *see Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 395 S.E.2d 85, 97 (N.C. 1990), which is what Plaintiff clarified she intended to plead, (*see* ECF No. 15 at 2, 8, 12).

[3] Count One similarly claimed that Plaintiff was handcuffed and "taken to the ground."  (ECF No. 1 at 8–9, ¶¶ 67, 70.)  However, Count One was dismissed to the extent it was based on Plaintiff being seized via handcuffs for failure to state a claim.  (ECF No. 26 at 17.)

[4] The Government also moved to dismiss Count Three, (*see* ECF Nos. 9, 10), and Plaintiff conceded that cause of action, (*see* ECF No. 26 at 3, n.3).

2

immunity of the United States for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). If there is a statute, regulation, or policy that "proscrib[es] a specific course of action," the DFE cannot apply because the conduct "involves no legitimate element of judgment or choice and the function in question cannot be said to be discretionary." *Baum v. United States*, 986 F.2d 716, 720 (4th Cir. 1993). The Court granted the previous motion in part and dismissed portions of Plaintiff's claims on this basis. (*See* ECF No. 26.)

However, the Court also denied that motion in part. (*See id.*) Specifically, Plaintiff argued that the DFE does not cover violations of the Fourth Amendment. (ECF No. 15 at 2, 6). Even though the Complaint does not assert any constitutional cause of action, (*see generally* ECF No. 1), Plaintiff later clarified that her state law claims are premised on alleged seizures in violation of the Fourth Amendment, (*see* ECF No. 26 at 8). The Court found that Plaintiff's allegations stated plausible Fourth Amendment violations and that law enforcement action that offends the Fourth Amendment is not protected by the DFE. (*See id.* at 14 (collecting cases).) Thus, both Counts One and Two survived to the extent that they were premised on Plaintiff's alleged unlawful seizures. (*Id.*)

Plaintiff also argued that the United States violated the USMS policy directive that "deadly force may not be used solely to prevent the escape of a fleeing suspect." (ECF No. 1 at 12, ¶ 96.) The Court found that Plaintiff's allegations make it plausible that the Government violated the USMS directive that "prohibits such action." (ECF No. 26 at 12.) Thus, Count Two also

3

survived to the extent that it was premised on the Government's alleged use of deadly force solely to prevent Jennings from fleeing. (*Id.*)

Ultimately, Count One survived only to the extent that it is premised on Plaintiff's alleged seizure via vehicle containment. Count Two survived to the extent that it is based on either of Plaintiff's alleged seizures and/or Tillman's alleged violation of the USMS policy directive prohibiting use of deadly force solely to prevent the escape of Jennings.

The United States then filed the pending Motion to Dismiss on November 19, 2025. (ECF No. 33.) Plaintiff filed a response,[5] (ECF No. 35), and the Government filed a reply, (ECF No. 36). As such, the motion is fully briefed and ripe for adjudication.

## II.    *LEGAL STANDARD*

It is axiomatic that a court must find it has jurisdiction before determining the validity of any claims brought before it. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). "The burden of showing the existence of subject matter jurisdiction rests on the plaintiff." *Adkins v. United States*, 923 F. Supp. 2d 853, 857 (S.D. W. Va. 2013) (citation omitted). "If the plaintiff fails to meet this burden, then the claim must be dismissed." *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005) (citing *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001)).

---

[5] In her response, Plaintiff also "motions this Court to deny the Defendant's Second Motion to Dismiss" and "further requests an extension of the deadline to respond and reserves the right to supplement this motion and attached brief." (ECF No. 35 at 1.) Additionally, Plaintiff "requests this Court strike" certain arguments made by the Government. (*Id.*) Lastly, "should any portion of the complaint be dismissed for a pleading insufficiency, [P]laintiff respectfully requests leave to replead." (ECF No. 35-1 at 7.) Plaintiff does not provide the legal standards or substantive arguments for any of these "motions." (*See* ECF Nos. 35 at 1; 35-1 at 7.) Nevertheless, because Plaintiff did not file separate motions seeking such relief, as is required under the local rules, *see* L.R. Civ. P. 7.1(c)(2) ("Motions shall not be included in responsive briefs. Each motion must be set forth as a separately filed pleading."), her requests are **DENIED**. Further, Plaintiff has no authority to "reserve the right" to supplement her arguments and, instead, must move the Court for leave to file an additional brief. *Cf.* L.R. Civ. P. 7.1(e) ("Surreplies are neither anticipated nor allowed by this Rule, but leave of Court may be sought to file a surreply when warranted.").

### III. DISCUSSION

In the pending motion, the Government moves to dismiss Counts One and Two for lack of subject matter jurisdiction because it is shielded by sovereign immunity.[6]  (ECF No. 34 at 8–18.) "As a sovereign, the United States is immune from all suits against it absent an express waiver of its immunity." *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.").  "[T]he terms of [the Government's] consent to be sued in any court define that court's jurisdiction to entertain the suit." *Sherwood*, 312 U.S. at 586–87 (citing *Minnesota v. United States*, 305 U.S. 382, 388 (1988)).  As such, courts strictly construe all waivers of sovereign immunity "in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996).  Thus, "it is the plaintiff's burden to show that an unequivocal waiver of sovereign immunity exists and that none of the statute's waiver exceptions apply to his particular claim," and if not, then the court must dismiss the plaintiff's claims. *Welch*, 409 F.3d at 650–51 (citing *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) and *Medina*, 259 F.3d at 223).

The FTCA provides that district courts have "exclusive jurisdiction of civil actions on claims against the United States, for money damages," for injuries made "by the negligent or wrongful act or omission of any employee of the Government . . . , under circumstances where the United States, if acting as a private person, would be liable to the claimant in accordance with the law of the place where the action or omission occurred." 28 U.S.C. § 1346(b)(1).  This language

---

[6] The Government also moves to dismiss Count Two for failure to state a claim.  (ECF No. 34 at 4–8.)  However, because the Court lacks subject matter jurisdiction over Count Two, as discussed below, it need not and cannot address the merits of the Government's Rule 12(b)(6) argument.  *See Shing v. MD Dev. Disabilities Admin.*, 698 Fed. App'x 70, 72 (4th Cir. 2017) (explaining that "a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits").

"creates a limited waiver of the United States' sovereign immunity by authorizing damages actions for injuries caused by the tortious conduct of federal employees acting within the scope of their employment, when a private person would be liable for such conduct under state law." *Suter v. United States*, 441 F.3d 306, 310 (4th Cir. 2006) (citing 28 U.S.C. § 1346(b)(1)). Therefore, the FTCA "permits the United States to be held liable in tort in the same respect as a private person . . . under the law of the place where the act occurred." *Medina*, 259 F.3d at 223 (citing *Harris v. United States*, 718 F.2d 654, 656 (4th Cir. 1983)). The plaintiff bears the burden of showing that the United States has waived its sovereign immunity. *See Williams*, 50 F.3d at 304.

Here, the Government argues that neither of Plaintiff's remaining claims assert liability under an analogous state law.[7] (ECF No. 34 at 8–18.) In response, Plaintiff merely asserts that "[t]he analogous state torts are still negligent infliction of emotional distress and intentional infliction of emotional distress." (ECF No. 35-1 at 4.) Each cause of action is discussed in turn below.

### A. NIED

Under North Carolina law, an NIED claim has three elements: (1) the defendant negligently engaged in conduct; (2) it was reasonably foreseeable that this conduct would cause severe emotional distress; and (3) the conduct did, in fact, cause severe emotional distress. *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 395 S.E.2d 85, 97 (N.C. 1990). As the first element above suggests, the Plaintiff must also establish all of the elements of negligence to satisfy the first element of an NIED claim. *See Thomas v. Weddle*, 605 S.E.2d 244, 249 (N.C. Ct. App.

---

[7] Because the Government's alleged tortious acts occurred in North Carolina, the Court applies North Carolina substantive law. *United States v. Neustadt*, 366 U.S. 696, 706 n.15 (1961); *Meyer*, 510 U.S. at 478 (1994) ("[W]e have consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State — the source of substantive liability under the FTCA.").

6

2004) ("A claim for negligent infliction of emotional distress also depends upon evidence that the defendants acted negligently."); *see also Demarco v. Charlotte-Mecklenburg Hosp. Auth.*, 836 S.E.2d 322, 328 (N.C. App. 2019) (finding that when a "plaintiff has pleaded a viable claim for negligence arising from the same facts, we need only consider whether her complaint adequately pleads damages in the form of "severe emotional distress").

Here, Plaintiff's NIED claim is premised on alleged violations of the Fourth Amendment and a USMS policy directive, as discussed above. Thus, the Court previously found that Count Two sounded in negligence *per se*, which requires, *inter alia*, that the defendant breached "a duty created by a statute or ordinance." (ECF No. 26 at 19–20 (internal citations omitted).)

The issue is that the FTCA only "permits the United States to be held liable in tort in the same respect as a private person . . . under the law of the place where the act occurred." *Medina*, 259 F.3d at 223 (citing *Harris*, 718 F.2d at 656). Put another way, the statute only confers jurisdiction "when [an] alleged breach of duty is tortious under *state* law, or when the Government has breached a duty under federal law that is analogous to a duty of care recognized by state law." *Goldstar (Panama) S.A. v. United States*, 967 F.2d 965, 969 (4th Cir. 1992). As such, "the mere allegation of a breach of duty under Federal law does not, by itself, state a valid tort claim against the Government" that would convey jurisdiction under the FTCA. *Id*.

In that regard, Count Two "rests on a tower of supposition." (ECF No. 34 at 12.) Plaintiff's NIED claim requires a showing of negligence. For her negligence theory, Plaintiff alleges breaches of federal law duties.[8] In order for the Court to have jurisdiction under the

---

[8] Plaintiff seemingly insists that she is pursuing a "common law tort claim." (ECF No. 35-1 at 4.) This runs headfirst into the fact that, at the motions hearing held on November 14, 2024, Plaintiff made clear that her state law claims are premised on alleged Fourth Amendment violations. (*See also* ECF No. 15 at 2, 6 (arguing that the DFE does not cover violations of the Fourth Amendment).) Additionally, the Government's first motion to dismiss argued

7

FTCA, there has to be a recognized duty of care under North Carolina law that is analogous to the Government's alleged breaches of federal law duties. *See also Doe v. United States*, 381 F. Supp. 3d 573, 605 (M.D.N.C. 2019) (explaining that, in the FTCA context, "the negligence *per se* claim must be cognizable under the state's negligence *per se* law"). In short, in order for Plaintiff's NIED claim to prevail, the Government's alleged violations of the Fourth Amendment and/or the USMS policy directive would also have to be a breach of duty under North Carolina law.

However, even though Plaintiff bears the burden of showing that the United States has waived its sovereign immunity under the FTCA, *Williams*, 50 F.3d at 304, she offers absolutely no potential state law analogs, (*see generally* ECF No. 35-1).[9] In doing so, she has failed to meet her burden of showing that this Court has subject matter jurisdiction over her NIED claim, and Count Two must be dismissed. *Welch*, 409 F.3d at 650–51. To be sure, though, the Government argues that there is no liability under any state law analog. (*See* ECF No. 8 at 15.) Each of the Government's proffered potential analogs are briefly discussed in turn below.

i.   USMS Policy Directive

To start, the Government suggests that "portions of the North Carolina statute pertaining to the use of deadly force for a fleeing suspect are the closest arguable state analog to the above-

---

that Plaintiff failed to plausibly state a common law duty or breach, (*see* ECF No. 10 at 14), and Plaintiff failed to substantively respond to this argument, (*see* ECF No. 15 at 13 (merely invoking the "common law understanding of duty and breach")). By failing to respond to this argument, Plaintiff thereby conceded the issue. *See Fields v. King*, 576 F. Supp. 3d 392, 408 (S.D. W. Va. 2021). Thus, the Court's prior finding that Plaintiff's claim sounded in negligence *per se*, (ECF No. 26 at 19–20), is *the only theory* in which Count Two survived the Government's first motion to dismiss. If Plaintiff disagreed with the Court's finding that she was asserting a negligence *per se* claim, she should have made an appropriate motion under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 7(b) ("A request for a court order must be made by motion."). However, she cannot simply ignore the Court's finding at this juncture.

[9] In fact, Plaintiff's response is largely unresponsive to the Government's arguments. (*See generally* ECF No. 35-1.)

8

referenced USMS policy." (ECF No. 34 at 9.) North Carolina General Statute § 15A-401(d)(2) "sets forth the situations in which a police officer may use deadly force without fear of incurring criminal *or civil* liability." *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017) (internal quotations and citations omitted). Section 15A–401(d) states, in pertinent part, as follows:

> [A] law-enforcement officer is justified in using deadly physical force upon another person . . . *only* when it is or appears to be reasonably necessary . . .
>
>> b. [t]o effect an arrest or to prevent the escape from custody of a person who he reasonably believes is attempting to escape by means of a deadly weapon, or who by his conduct or any other means indicates that he presents an imminent threat of death or serious physical injury to others unless apprehended without delay; or
>>
>> c. [t]o prevent the escape of a person from custody imposed upon him as a result of conviction for a felony.

N.C. Gen. Stat. § 15A–401(d)(2)(b),(c) (emphasis added).

Here, the United States claims it would not be liable under this statute. (*See* ECF No. 34 at 10.) The Government reasons that "Plaintiff's allegations, taken as true, undisputably demonstrate an officer would have concluded that deadly force was (or, at a minimum, *appeared* to be) reasonably necessary." (*Id.* at 10–11 (providing allegations from the Complaint verbatim).) In particular, the Government recalls that Jennings "reached toward a gun in his vehicle's cupholder," which "occurred while he actively engaged in a physical struggle with two CRFTF members." (*Id.* at 11.) The Government also believes that the North Carolina public official immunity would apply if it stood in the shoes of a private individual. (*See id.*; *see also* ECF No. 26 at 14, n.9 ("Under North Carolina law, a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto." (internal quotations and citations omitted).)

9

Conversely, Plaintiff states, without any explanation, that the Government's assertion that § 15A-401(d)(2) is an analog to the USMS policy is "misplaced."[10]   (*See* ECF No. 35-1 at 5.) Plaintiff also contends that a "car is not inherently a deadly weapon," (*id.* at 6), but fails to address the fact that "North Carolina courts have held that a car may be deemed a 'deadly weapon' when the manner of its use by [the] defendant clearly put the officers in danger of death or great bodily harm," *see Lee*, 863 F.3d at 330 (internal quotations and citations omitted; collecting cases). Further, Plaintiff concedes that "a firearm or similar weapon . . . is inherently deadly and dangerous."   (ECF No. 35-1 at 6.)

Assuming without deciding that § 15A-401(d) is an appropriate analog, the Court agrees with the Government's thorough analysis.   (ECF No. 34 at 9–12.)   At the very least, Plaintiff has not met her burden of showing that the Government would be plausibly liable for the alleged conduct under §15A-401(d).   Therefore, the Government's Motion to Dismiss is **GRANTED** under Rule 12(b)(1) to the extent that Count Two is premised on an alleged violation of USMS policy.

---

[10] This assertion is curious, as Plaintiff *needs* a state law analog in order for her claim to prevail.   Further, Plaintiff is likely incorrect.   The Court "determine[s] the Government's liability 'in accordance with the law of the place where the [negligent] act or omission occurred.'"   *Robertson v. United States*, 144 F.4th 610, 614 (4th Cir. 2025) (internal citations omitted).   "If that private party in like circumstances could not be held liable, then the United States has not waived its sovereign immunity."   *Id.* (internal citations omitted).   "'Like circumstances' should not be construed so narrowly that no private comparator exists."   *Id.* (citing *United States v. Olson*, 546 U.S. 43, 45–47 (2005)).   "Rather, because the words 'like circumstances' do not restrict a court's inquiry to the same circumstances, courts must look further afield to find a private individual under similar circumstances."   *Id.* (internal quotations and citations omitted); *see also Indian Towing*, 350 U.S. at 64–68 (interpreting "like circumstances" for Coast Guard's operation of lighthouse to mean those "who undertake[ ] to warn the public of danger and thereby induce[ ] reliance").   Here, Section 15A-401(d)(2) is likely an appropriate analog to the USMS policy at issue.

### ii.     Fourth Amendment

The Government next suggests that state law analogs to the alleged Fourth Amendment violations[11] based upon unreasonable seizures are likely found in North Carolina Constitution and North Carolina General Statute § 15A-401(b).   (*See* ECF No. 34 at 13–15.)   The North Carolina Constitution prohibits unreasonable seizures, *see* N.C. Const. art. I, § 20, and §15A-401(b) provides a statutory basis for making an arrest without a warrant, *see* N.C. Gen. Stat. § 15A-401(b). However, the Government argues that, even if Plaintiff stated a plausible claim under the North Carolina Constitution, it would not be liable.   (ECF No. 34 at 14.)

Of relevance,[12] "under North Carolina law, a plaintiff may not assert a direct claim under the North Carolina Constitution if the plaintiff has an 'adequate state remedy' at common law or

---

[11] To be sure, the Fourth Amendment does not impose a specific duty that can serve as a foundation for a negligence *per se* claim.   (*Cf.* ECF No. 26 at 20 (explaining that, to prevail on a negligence *per se* claim under North Carolina law, Plaintiff would have to show, *inter alia*, a violation of a public safety statute or ordinance, which 'impos[es] upon [the defendant] a specific duty for the protection of others'" (quoting *Lutz Indus., Inc. v. Dixie Home Stores,* 88 S.E.2d 333, 339 (N.C. 1955)).)   The Fourth Amendment merely confers "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures. . . ."   U.S. Const. amend. IV; *accord Handy v. Luenza*, No. 16-CV-02110-WYD-MEH, 2017 WL 1407042, at *7 (D. Colo. Apr. 17, 2017) (reasoning that the Amendments to the Constitution cannot form the basis of a negligence *per se* claim because they "confer certain rights and obligations on certain individuals" and were not enacted to protect the public from harm); *accord Brantley v. Muscogee Cnty. Sch. Dist.*, No. 4:10-CV-77 CDL, 2011 WL 3706567, at *6 (M.D. Ga. Aug. 24, 2011) (holding that a negligence *per se* claim cannot be based on an alleged violation of the Georgia Constitution because, "[a]lthough the Georgia Constitution may provide Plaintiffs with various rights and protections," it does not impose a legal duty).   While Plaintiff appears to argue that the standard for Fourth Amendment violations is set forth in the Supreme Court's decision in in *Graham v. Connor*, 490 U.S. 386, 395 (1989), (*see* ECF No. 35-1 at 2), that is distinct from arguing that the Fourth Amendment itself imposes a specific duty.

As such, it is quite an imbroglio to decipher a state law analog to an alleged federal law duty that does not exist. Nevertheless, because the Court must first determine that it has jurisdiction before it can adjudicate the substance of the claims, it proceeds as if the Fourth Amendment does impose a duty on law enforcement officers.

[12] Among other arguments, the Government claims that "[b]y conceding her state constitutional claims . . . Plaintiff has acknowledged that there is no liability under any state law analog to a Fourth Amendment violation."   (ECF No. 34 at 14.)   The Court does not necessarily agree that a plaintiff's failure to respond to an argument in a motion to dismiss, which is an inherent concession of the issue, means that there is no potential liability under the later dismissed cause of action.   Sometimes, it is simply a reflection of poor lawyering.   Nevertheless, because there is an adequate state law remedy, discussed below, it need not resolve the Government's argument regarding Plaintiff's conceded state constitution claims.

11

under state statute." *Locklear v. Town of Pembroke, N.C.*, 531 F. App'x 379, 382 (4th Cir. 2013) (citing *Copper ex rel. Copper v. Denlinger*, 688 S.E.2d 426, 429 (N.C. 2010) and *Corum v. Univ. of N.C. Through Bd. of Govs.*, 413 S.E.2d 276, 289 (N.C. 1992)). The determination of the adequacy of the state remedy is not dependent on the success of the plaintiff's claim. *DeBaun v. Kuszaj*, 749 S.E.2d 110 (N.C. App. 2013). Thus, a remedy may be "adequate" even if it is barred by an immunity doctrine. *See Rousselo v. Starling*, 495 S.E.2d 725, 731 (N.C. App. 1998) (rejecting a plaintiff's argument that "there is no adequate state law remedy" because "common law immunity would defeat any common law tort claim that he brought against the State," by reasoning that "the existence of an adequate alternate remedy is premised on whether there is a remedy available to plaintiff for the violation, not on whether there is a right to obtain that remedy").

In this case, the Government states that "Plaintiff's adequate remedies include her IIED and NIED claims, regardless of whether they are dismissed" for lack of subject matter jurisdiction. (*See* ECF No. 34 at 14–15.) Plaintiff does not rebut this argument, (*see generally* ECF No. 35-1), and thereby concedes the issue, *see Fields*, 576 F. Supp. 3d at 408. The Court also notes that the existence of the common law tort of false imprisonment forecloses a direct constitutional claim based on the present facts. *See, e.g.*, *Alt v. Parker,* 435 S.E.2d 773, 779 (N.C. App. 1993), *cert. denied,* 442 S.E.2d 507 (N.C. 1994) (rejecting a direct state constitutional claim because the plaintiff's interest in being free from restraint was protected by common law claim for false imprisonment). Thus, the Government cannot be held directly liable under the North Carolina Constitution in this case.

12

Accordingly, because Plaintiff failed to meet her burden of showing plausible liability under any state law analog, *see Williams*, 50 F.3d at 304, the Government's Motion to Dismiss under Rule 12(b)(1) is **GRANTED** to the extent that Count Two is premised on the alleged unlawful seizures.

### B. IIED

Next, the Government appears to argue that Plaintiff's state law claim for IIED must also be dismissed because there is no liability under an analogous state law. (ECF No. 34 at 12.) Specifically, the Government argues that Plaintiff cannot bring an FTCA claim based solely on a federal constitutional violation, (*id.*), and "[t]he core of her claims arises from . . . federal constitutional torts, regardless of how many state torts Plaintiff attempts to layer around it," (*id.* at 6). The Court does not agree.

North Carolina law recognizes a cause of action for IIED. *See Dickens v. Puryear*, 276 S.E.2d 325, 332 (N.C. 1981). Unlike the "tower of suppositions" looming over Plaintiff's NIED claim, her IIED claim does *not* require a showing of negligence, which ultimately required an analogous duty of care under North Carolina law, as discussed *supra*. Thus, Plaintiff's IIED claim satisfies the provision of the FTCA limiting liability to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *see also Lovo v. United States*, No. 1:22CV1008, 2024 WL 1349516, at *7 (M.D.N.C. Mar. 29, 2024) (addressing the merits of an IIED claim brought under the FTCA); *Murphy v. United States*, No. 5:18-CT-03058-BO, 2020 WL 578941, at *5 (E.D.N.C. Feb. 5, 2020) (recognizing that the FTCA does not bar IIED claims).

13

The Government's theory that Plaintiff's IIED claim is truly a federal constitution tort masked in a state law tort claim is not persuasive, either. The Court and the Government have recognized, multiple times, that Plaintiff did not assert any federal constitutional claims in her Complaint. (*See, e.g.*, ECF No. 26 at 8; ECF No. 16 at 2 ("[N]either *Bivens* nor any alleged violations of the U.S. Constitution are pleaded (or mentioned) in the Complaint.")). Rather, Count One is clearly labeled as a claim for IIED. (*See* ECF No. 1 at 7–9.) The Court previously held that Plaintiff plausibly pleaded a claim for IIED based on her alleged seizure via vehicle containment. (ECF No. 26 at 15–18.) The only reason a constitutional violation entered the discussion is because the Government moved to dismiss under the DFE, (ECF No. 9), and Plaintiff had to meet her burden of proving that the DFE does not apply, *see Indem. Ins. Co. of N. Am. v. United States*, 569 F.3d 175, 180 (4th Cir. 2009). To do so, she argued that the underlying conduct of Count One violated, *inter alia*, the United States Constitution. (ECF No. 15 at 2, 6). Such a defensive argument does not mechanically amend her state law claims into federal constitutional claims.

Accordingly, the Government's motion is **DENIED** insofar as it argues that the Court lacks jurisdiction over Count One.

### IV. CONCLUSION

For these reasons, the Government's Motion to Dismiss, (ECF No. 33), is **GRANTED IN PART** and **DENIED IN PART**. The Government's motion under Rule 12(b)(1) is **GRANTED** as to Count Two but **DENIED** as to Count One. Additionally, the Government's motion under Rule 12(b)(6) is **DENIED AS MOOT**. Further, any motions embedded in Plaintiff's response are **DENIED**.

14

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:     May 21, 2026

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

15